**KILPATRICK TOWNSEND & STOCKTON LLP**
Steven D. Moore (State Bar No. 290875)
smoore@kilpatricktowsend.com)
April E. Isaacson (State Bar No. 180638)
aisaacson@kilpatricktowsend.com
Benjamin M. Kleinman (State Bar No. 261846)
bkleinman@kilpatricktownsend.com
S. Emma Lee (State Bar No. 344074)
elee@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, California 94111
Telephone: 415 576 0200 / Facsimile: 415 576 0300

Richard Goldstucker *(admitted pro hac vice)*
rgoldstucker@kilpatricktownsend.com
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
Telephone: 404 815 6073 / Facsimile: 404 541 3301

Attorneys for Defendant
**MOTOROLA MOBILITY LLC**

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| LARGAN PRECISION CO., LTD.,<br><br>        Plaintiff,<br><br>    v.<br><br>MOTOROLA MOBILITY LLC,<br><br>        Defendant. | Civil Action No. 4:21-cv-09138-JSW<br><br>**MOTOROLA'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>Date:      February 1, 2024<br>Time:      10:00 a.m.<br>Ctrm.:     Courtroom 5 – 2nd Floor<br>Judge:     Hon. Jeffrey S. White<br>Complaint Filed:      November 24, 2021<br>Trial Date: Not Set |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...........................................................................................1

II.   PROCEDURAL POSTURE ...........................................................................1

III.  BACKGROUND ..............................................................................................2

       A.    Lens Design Terminology ...................................................................2

       B.    The Asserted Patents ..........................................................................4

IV.   LEGAL STANDARDS ....................................................................................5

V.    DISPUTED CONSTRUCTIONS ...................................................................7

       A.    Term 1: "convex/concave . . . surface" (both patents, all
             asserted claims) ...................................................................................7

             1.    *The Patentee Acted as its Own Lexicographer, and its
                   Definition, not the Plain and Ordinary Meaning,
                   Governs* ......................................................................................7

             2.    *The Lexicographic Definition "the portion of the
                   surface in proximity to the optical axis is
                   concave/convex" is Indefinite* ...............................................9

             3.    *The Court Can, and Should, Address Indefiniteness
                   Now* ..........................................................................................12

             4.    *Largan Does Not Dispute the Lexicographic
                   Definition, and Instead Posits an Irrelevant and
                   Incorrect Construction* ..........................................................13

                   (a)    In Light of Lexicography, Largan's "plain
                          and ordinary meaning" Analysis is
                          Irrelevant ......................................................................13

                   (b)    Largan's "plain and ordinary meaning"
                          Analysis is Legally Flawed ..........................................14

                   (c)    Largan's Extrinsic Evidence is Irrelevant
                          and Misleadingly Cited ................................................14

             5.    *Dr. Shanley's Report is Admissible and Helpful* ...............17

             6.    *Conclusion as to "concave/convex … surface"* ...................18

       B.    Term 2: "a fifth lens element with positive refractive
             power having a convex image-side surface, and at least one
             of an object side-surface and the image-side surface
             thereof being aspheric" ('767 patent, claim 16).............................19

VI.   CONCLUSION ..............................................................................................22

1

**TABLE OF AUTHORITIES**

2

Page

3

**Cases**

4

*01 Communique Lab'y, Inc. v. LogMeIn, Inc.*,

5

    687 F.3d 1292 (Fed. Cir. 2012) .......................................................................... 14

6

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
    350 F.3d 1365 (Fed. Cir. 2003) .......................................................................... 5, 8

7

*Abdou v. Alphatec Spine, Inc.*,

8

    No. 12-CV-1804 BEN (RBB), 2014 WL 6611422 (S.D. Cal. Nov. 19, 2014) ...................... 10

9

*Adaptix, Inc. v. Huawei Techs. Co. Ltd.*,

10

    74 F. Supp. 3d 832 (E.D. Tex. 2014) .................................................................... 9

11

*Astrazeneca AB v. Mut. Pharm. Co.*,
    384 F.3d 1333 (Fed. Cir. 2004) ......................................................................... 5

12

*Biogen MA Inc. v. EMD Serono, Inc.*,

13

    976 F.3d 1326 (Fed. Cir. 2020) ......................................................................... 7

14

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004) .......................................................................... 5

15

*CCS Fitness, Inc. v. Brunswick Corp.*,

16

    288 F.3d 1359 (Fed. Cir. 2002) ......................................................................... 7

17

*Chef Am., Inc. v. Lamb-Weston, Inc.*,

18

    358 F.3d 1371 (Fed. Cir. 2004) ......................................................................... 8

19

*Cont'l Cirs. LLC v. Intel Corp.*,

20

    915 F.3d 788 (Fed. Cir. 2019) ....................................................................... 7, 13

21

*Cuozzo Speed Techs., LLC v. Lee*,
    579 U.S. 261 (2016) ................................................................................... 16

22

*CVI/Beta Ventures, Inc. v. Tura LP*,

23

    112 F.3d 1146 (Fed. Cir. 1997) ......................................................................... 6

24

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003) .................................................................................... 6

25

*Enzo Biochem, Inc. v. Applera Corp.*,

26

    599 F.3d 1325 (Fed. Cir. 2010) ........................................................................ 15

27

*Exeltis USA, Inc. v. Lupin Ltd.*,

28

    No. 22-434-RGA, 2023 WL 2306736 (D. Del. Mar. 1, 2023) ........................................ 7, 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Gamevice, Inc. v. Nintendo Co., Ltd.*,
   No. 18-cv-01942-RS, 2023 WL 2500449 (N.D. Cal. Mar. 14, 2023) .............................. 20, 21

*Gentry Gallery, Inc. v. Berkline Corp.*,
   134 F.3d 1473 (Fed. Cir. 1998) ........................................................................................ 6

*Geoscope Techs. Pte. Ltd v. Apple Inc.*,
   No. 122-cv-01373-MSN-JFA, 2023 WL 4629539 (E.D. Va. July 19, 2023) ........................ 10

*Halliburton Energy Servs., Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008) .................................................................................... 9, 12

*Honeywell Int'l Inc. v. Universal Avionics Systems Corp.*,
   493 F.3d 1358 (Fed. Cir. 2007) ....................................................................................... 5

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014) ..................................................................................... 10

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,
   22 F.4th 1369 (Fed. Cir. 2022) ....................................................................................... 7

*Largan Precision Co. v. Genius Electronic Optical Co.*,
   No. 13-cv-02502-JD, 2014 WL 5358426 (N.D. Cal. Oct. 20, 2014) .............................. 16, 17

*LifeScan Scot., Ltd. v. Shasta Techs., LLC*,
   No. 11-cv-04494-WHO, 2016 WL 7732710 (N.D. Cal. Mar. 8, 2016) ............................... 16

*MasterObjects, Inc. v. Yahoo!*, Inc.,
   No. C 11-02539 JSW, 2013 WL 6185475 (N.D. Cal. Nov. 26, 2013) ................................. 12

*Merck & Co. v. Teva Pharms. USA, Inc.*,
   347 F.3d 1367 (Fed. Cir. 2003) ....................................................................................... 6

*Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*,
   166 F.3d 1190 (Fed. Cir. 1999) ................................................................................... 6, 22

*Nautilus*, Inc. v. Biosig Instruments, Inc.,
   572 U.S. 898 (2014) ............................................................................................... 5, 7, 9

*Nestle USA, Inc. v. Steuben Foods, Inc.*,
   686 F. App'x 917 (Fed. Cir. 2017) ................................................................................. 13

*In re Neurografox ('360) Pat. Litig.*,
   201 F. Supp. 3d 206 (D. Mass. 2016) ............................................................................ 10

**TABLE OF AUTHORITIES**
(continued)

<u>Page</u>

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (2005)................................................................................. 5, 6, 7, 14

*Process Control Corp. v. HydReclaim Corp.*,
    190 F.3d 1350 (Fed. Cir. 1999)................................................................................. 9

*Prolifiq Software Inc. v. Veeva Sys. Inc.*,
    No. C 13-03644 SI, 2014 WL 3870016 (N.D. Cal. Aug. 6, 2014) ..................................... 9, 12

*Rivera v. Int'l Trade Comm'n*,
    857 F.3d 1315 (Fed. Cir. 2017)........................................................... 19, 20, 21, 22

*SpeedTrack, Inc. v. Amazon.com, Inc.*,
    No. 4:09-cv-04479-JSW, 2019 WL 5864630 (N.D. Cal. Nov. 8, 2019), *aff'd sub*
    *nom. SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373 (Fed. Cir. 2021) ................................. 7

*Sunstone Info. Def., Inc. v. F5, Inc.*,
    No. 21-cv-09529-YGR, 2023 WL 2746762 (N.D. Cal. Mar. 30, 2023)................................. 12

*Thorner v. Sony Comput. Ent. Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)................................................................................. 5

*Transdata, Inc. v. Centerpoint Energy Hous. Elec. LLC*,
    Nos. 6:10cv00557 RWS-JDL, 6:16cv407-JDL, 2016 WL 3172791 (E.D. Tex.
    June 7, 2016))................................................................................. 9

*Vineyard Investigations. v. E. & J. Gallo Winery*,
    No. 1:19-cv-01482-JLT-SKO, 2023 WL 4409523 (E.D. Cal. July 7, 2023)......................... 9

**Statutes**

35 U.S.C. § 112................................................................................. 6, 22

35 U.S.C. § 314................................................................................. 16

1

## I.    INTRODUCTION

Plaintiff Largan Precision Co. alleges that Defendant Motorola Mobility LLC infringes claims 16-20 and 22-24 of U.S. Patent No. 8,310,767 ("the '767 patent", Ex. 1[1]) and claim 5 of U.S. Patent No. 9,784,948 ("the '948 patent", Ex. 2) by incorporating certain third-party lens assemblies in the cameras used in some of its smartphones.

The parties dispute the constructions of two terms: (1) "convex/concave . . . surface" and (2) "a fifth lens element with positive refractive power having a convex image-side surface, and at least one of an object side-surface and the image-side surface thereof being aspheric." The first appears in all asserted claims, and the second appears in all asserted claims of the '767 patent.

As to the first term, the asserted patents each include a clear lexicographic definition of the "convex/concave … surface," and that definition controls over any plain and ordinary meaning that would otherwise apply to the claim term. The lexicographic definitions, however, require a POSITA to know whether a portion of a lens surface is "proximate to" or "in proximity to" the optical axis of a lens. Proximity is not a term of art in the field, is given no meaning by the patents, and is amenable to inconsistent understandings. The claims, as defined by the patentee, fail to serve their public notice function and are indefinite.

As to the second, the claim term should be limited to encompass only that which the inventor disclosed, enabled, and possessed, which is that the fifth lens element have a concave object-side surface.

## II.    PROCEDURAL POSTURE

On November 24, 2021, Largan filed its complaint, alleging that Motorola infringed six United States Patents. The parties exchanged infringement and invalidity contentions and completed the pre-briefing claim construction process, including exchanging expert reports and filing a joint claim construction statement. Dkt. 55, filed June 24, 2022.

---

[1] Unless otherwise specified, numerical exhibits are submitted to the Court as exhibits to the Declaration of Benjamin M. Kleinman, filed contemporaneously with this brief.

1    Meanwhile, from May to June 2022, Motorola filed six petitions for *inter partes* review

2    challenging various claims of those patents. Five of the petitions were instituted.[2]

3    On July 26, 2022, after the IPR petitions were filed, the Court stayed this action. Dkt. 70.

4    To persuade the Court to lift the stay, Largan dismissed the entirety of four of the originally

5    asserted patents and dismissed certain claims from the other two, leaving only the currently

6    asserted claims, all from the '767 and '948 patents. The Court lifted the stay on May 16, 2023.

7    Dkt. 82.

8    After the stay was lifted, the parties served amended infringement and invalidity

9    contentions and again completed the pre-briefing claim construction process, including

10    exchanging a second set of expert reports and filing a second joint claim construction statement.

11    Dkt. 98. The parties agreed on the construction of four terms, listed below, and identified the two

12    disputed terms that are briefed herein.

| Recited in Claims | Term or Phrase | Stipulated Construction |
|---|---|---|
| '767:  16, 18, 22<br>'948:   5 | focal length | effective focal length |
| '767:   18 | thickness of the . . . lens element on the optical axis / central thickness | thickness between the surfaces of a lens element on the optical axis |
| '767:   16-20, 22-24 | inflection point | point at which the concavity of the surface changes from concave to convex or vice versa |
| '767: 17-20 | aperture stop | opening that determines the size of the bundle of rays that pass through the optical system from the axial object point |

22    Largan then moved to strike the expert report of Dr. Shanley, but that motion was denied.

23    Dkt. 104. Largan filed its opening claim construction brief on December 4, 2023. Dkt. 105.

**III.    BACKGROUND**

**A.    Lens Design Terminology**

Largan's invention is directed to lens assemblies which may, among other things, be

---

[2] Largan abandoned its defense and accepted adverse judgment invalidating the challenged claims in two IPRs, and the Board invalidated the challenged claims in a third. Two remain pending.

included in smartphone cameras. These products currently have lenses that are typically no larger in diameter than 25 mm (and often much smaller). The patent discloses that each lens in the lens assemblies in question has thicknesses measured in fractions of a millimeter. Relevant terms of art can be explained with reference to an annotated Figure 1A of the '767 patent.



Fig. 1A

By convention, illustrations of optical systems such as the figure above assume the object to be imaged (not shown in this figure) is on the left and the resulting image is on the right (here, on image plane 180). The light rays under consideration travel from left to right (object-side to image-side). Accordingly, the left surface of each lens is the object-side surface and the right surface is the image-side surface. This figure shows a lens assembly comprised of six lenses (110, 120, 130, 140, 150, and 160), each of which has an object-side surface (111, 121, 131, 141, 151, and 161), and an image-side surface (112, 122, 132, 142, 152, and 162). Through the center of the image, present in the original figure and here highlighted in red, is the optical axis. This is not a physical element, but it is the theoretical line through the midpoint of the lens assembly and each of the individual lenses.

1    A lens surface can be spheric (defined by the equation for a sphere) or aspheric (not so

2 defined). *See* Barbastathis Report (Ex. 3) at 6:10-15, First Bentley Report (Ex. 4) ¶ 27. Some

3 aspheric lenses, but not all, have one or more "inflection points." *See* Barbastathis Report (Ex. 3)

4 at 6:16-23. *See also* Shanley Report (Ex. 5) at 6:20-25 (describing inflection points but not using

5 the term). At an inflection point, the curvature of the lens changes. Dkt. 98 at 2:10-12 (the parties

6 agree that an inflection point is a "point at which the concavity of the surface changes from

7 concave to convex or vice versa.").

8    In the absence of a specific definition like that presented in each of the asserted patents, a

9 POSITA would refer to a lens as convex if it bulges away from the center of the lens, as concave if

10 it presses toward the center of the lens, and as plano or planar if it has no curvature. *See*

11 Barbastathis Report (Ex. 3) at 6:4-8; Shanley Report (Ex. 5) at 4:25-28; First Bentley Report (Ex.

12 4) ¶ 27. The object-side surface and the image-side surface may have different curvatures.

13    Although some of the surfaces in the figure above may look spheric (*e.g.*, element 111, the

14 object-side surface of lens 1) or plano (*e.g.*, element 112, the image-side surface of lens 1), the

15 lens properties set forth in the '767 patent show that they are not—all are aspheric. *See* '767 patent

16 (Ex. 1) Table 1, at column 8.

17    The object-side surface of lens 4 (141) appears concave and the image-side surface of lens

18 4 (142) appears convex. On the image-side surface of lens 6 (element 162), one can visually infer

19 the existence of inflection points (whose presence is confirmed by the specification). They can be

20 inferred from observing that this surface presses inward (toward the center of the lens) at the

21 optical axis (highlighted in yellow), and bulges away from the center of the lens at each of the

22 portions highlighted in green. Necessarily and by definition, there is an inflection point between

23 the yellow highlight and each of the green highlights.

24    **B.    The Asserted Patents**

25    The '767 patent is entitled "Image Capturing Lens Assembly" and claims a six-lens

26 assembly made up of individual lenses each having specific characteristics. Ex. 1. at Abstract and

27 cl. 16. The '767 patent discloses nine specific embodiments. *See id.* figs. 1-9. The '948 patent is

28 entitled "Imaging Lens System" and claims a five-lens assembly also made up of individual lenses

1    each having specific characteristics. Ex. 2 at Abstract and cl. 1. The '948 patent discloses three

2    specific embodiments. *See id.* figs. 1-13.

3        Relevant to this dispute, each asserted patent redefines "convex" and "concave," providing

4    a definition that differs from a POSITA's normal understanding. For example, the '767 patent

5    states that a surface is convex only if "the portion of the surface in proximity to the optical axis is

6    convex." Ex. 1, 6:35-38.

7    **IV.    LEGAL STANDARDS**

8        Patent claims serve a public notice function, and if those claims "fail to inform, with

9    reasonable certainty, those skilled in the art about the scope of the invention" then they are

10    indefinite. *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 901 (2014).

11        Although claim terms are generally given their ordinary and customary meaning from the

12    perspective of a POSITA at the time of the invention, "[t]he inventor's written description of the

13    invention . . . is relevant and controlling insofar as it provides *clear lexicography*." *Thorner v.*

14    *Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365-66 (Fed. Cir. 2012) (quoting *C.R. Bard, Inc. v.*

15    *U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)); *see also Phillips v. AWH Corp.*, 415

16    F.3d 1303, 1316 (2005) (finding the specification may reveal a special definition for a term and,

17    "[i]n such cases, the inventor's lexicography governs"); *Honeywell Int'l Inc. v. Universal Avionics*

18    *Systems Corp.*, 493 F.3d 1358, 1361 (Fed. Cir. 2007) ("When a patentee defines a claim term, the

19    patentee's definition governs, even if it is contrary to the conventional meaning of the term.").

20        To act as its own lexicographer, "a patentee must 'clearly set forth a definition of the

21    disputed claim term.'" *Thorner*, 669 F.3d at 1365 (citation omitted). Courts look to the language

22    of the specification to determine whether such a definition was set forth, and view statements like

23    "'Multiple embossed' *means* two or more embossing patterns are superimposed . . . ." (*3M*

24    *Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1369, 1371 (Fed. Cir. 2003)

25    (emphasis added) (citation omitted)) and "[t]he solubilizers suitable according to the invention *are*

26    *defined below*" (*Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004)

27    (alteration in original) (citation omitted)) as indicative of lexicography.

28

1    Only if there is no governing lexicography do courts turn to the language of the claims,

2    which "provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415

3    F.3d at 1314. But the claims do not stand alone. Instead, they are a part of a "'fully integrated

4    written instrument' consisting principally of a specification that concludes with the claims." *Id.* at

5    1315 (internal citation omitted). Courts have long recognized that the figures are a part of the

6    specification that is "highly relevant in construing the [disputed] limitations of the claims."

7    *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1153 (Fed. Cir. 1997) ("We thus turn to the

8    specifications. In that regard, the patent drawings are highly relevant . . . ." (footnote omitted)).

9    "[T]he scope of the right to exclude may be limited by a narrow disclosure. . . . In sum, the

10    cases . . . do not stand for the proposition that an applicant can broaden his claims to the extent

11    that they are effectively bounded only by the prior art. Rather, they make clear that claims may be

12    no broader than the supporting disclosure, and therefore that a narrow disclosure will limit claim

13    breadth." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479-80 (Fed. Cir. 1998). A

14    claim's scope, therefore, must be limited to that which is disclosed and enabled in the

15    specification. *See* 35 U.S.C. § 112(a) (2012) ("The specification shall contain a written description

16    of the invention, and of the manner and process of making and using it, in such full, clear, concise,

17    and exact terms as to enable any person skilled in the art . . . to make and use the same . . . ."); *see*

18    *also Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1196 (Fed. Cir.

19    1999) ("The scope of the claims must be less than or equal to the scope of the enablement.");

20    *Eldred v. Ashcroft*, 537 U.S. 186, 190 (2003) ("[I]mmediate disclosure is not the objective of, but

21    is *exacted from*, the patentee.").

22    If the application of controlling law to the specification results in a legal construction,

23    extrinsic evidence, such as expert testimony, need not be considered, because it cannot change the

24    meaning. *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1372 (Fed. Cir. 2003)

25    ("[E]vidence extrinsic to the patent documents cannot change the meaning of a term as used in the

26    claim from the meaning with which it is used in the specification."); *Phillips*, 415 F.3d at 1317

27    ("[E]xtrinsic evidence. . . 'consists of all evidence external to the patent and prosecution history,

28

including expert and inventor testimony, dictionaries, and learned treatises.'") (citations and quotations omitted).

## V.    DISPUTED CONSTRUCTIONS

### A.    Term 1: "convex/concave . . . surface" (both patents, all asserted claims)

| Largan's Proposal | Motorola's Proposal |
|---|---|
| "surface that is convex/concave where the surface intersects the optical axis" | Indefinite |

As discussed in the Joint Claim Construction Statement (Dkt. 98 at 3-4), Motorola asks the Court to decide the "convex/concave . . . surface" term is indefinite because the patentee acted as its own lexicographer, and in so doing "defined [the term] into indefiniteness." *Exeltis USA, Inc. v. Lupin Ltd.*, No. 22-434-RGA, 2023 WL 2306736, at *6 (D. Del. Mar. 1, 2023). The patentee's definition fails to set forth metes and bounds for claim, thereby preventing those in the art from avoiding or designing around the alleged invention. *See Nautilus*, 572 U.S. at 901.

### 1.    *The Patentee Acted as its Own Lexicographer, and its Definition, not the Plain and Ordinary Meaning, Governs*

As noted above, the plain and ordinary meaning of a claim term is irrelevant "if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). Rather, "because the patentee acted as a lexicographer, the definition provided in the specification governs." *SpeedTrack, Inc. v. Amazon.com, Inc*., No. 4:09-cv-04479-JSW, 2019 WL 5864630, at *6 (N.D. Cal. Nov. 8, 2019), *aff'd sub nom. SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373 (Fed. Cir. 2021). *See also Phillips*, 415 F.3d at 1316; *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 796 (Fed. Cir. 2019) ("When the patentee acts as its own lexicographer, that definition governs."); *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1379 (Fed. Cir. 2022) ("Because the patentee clearly defined 'driven position' in the written description, that definition controls." (citation omitted)); *Biogen MA Inc. v. EMD Serono, Inc.*, 976 F.3d 1326, 1335-36 (Fed. Cir. 2020) (noting that patentee's "argument fails to give effect to [the] explicit definition of 'polypeptide' in the specification. We must respect this lexicographic choice.").

Here, the specifications define what it means for a lens to have a convex surface:

- "In the present image capturing lens assembly, if a lens element is described to have a convex surface, ***it means*** the portion of the surface in proximity to the optical axis is convex . . . ." '767 patent (Ex. 1) at 6:35-40 (emphasis added).

- "In the present imaging lens system, if a lens element has a convex surface, ***it means*** the portion of the surface proximate to the optical axis is convex . . . ." '948 patent (Ex. 2) at 6:65-7:2 (emphasis added).

The two patents also define what it means for a lens to have a concave surface:

- "In the present image capturing lens assembly, . . . if a lens element is described to have a concave surface, ***it means*** the portion of the surface in proximity to the optical axis is concave." '767 patent (Ex. 1) at 6:35-40 (emphasis added).

- "In the present imaging lens system, . . . if a lens element has a concave surface, ***it means*** the portion of the surface proximate to the optical axis is concave." '948 patent (Ex. 2) at 6:65-7:2 (emphasis added).

Such language clearly defines the "convex/concave…surface" term. *Innovative Props.*, 350 F.3d at 1369 (finding patentee acted as lexicographer when the specification explicitly stated: "'Multiple embossed' ***means*** two or more embossing patterns are superimposed on the web to create a complex pattern of differing depths of embossing" (emphasis added) (citation omitted)).

Largan does not argue that this language is not lexicographic. In fact, Largan's own expert acknowledges the definitional nature of this language: "The specification of each of the Asserted Patents provides express description of what it means for a surface to be a convex surface." First Bentley Report (Ex. 4) ¶ 92. But in its opening brief, Largan ignores this language.

But because the asserted patents define "concave/convex…surface" as concave/convex in "the portion in proximity to the optical axis,"[3] that is the definition that governs—even if it renders the claims indefinite. *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("[W]here as here, claims are susceptible to only one reasonable interpretation and that

---

[3] For readability, the language of the '767 patent ("in proximity to") may be used herein instead of repeatedly also reciting the language of the '948 patent ("proximate to"). All arguments apply with equal force to both formulations.

interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated." (quoting *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999))); *Exeltis USA*, 2023 WL 2306736, at *6 ("The patentees took a perfectly good and easily understood word and defined it into indefiniteness.").

### 2. The Lexicographic Definition "the portion of the surface in proximity to the optical axis is concave/convex" is Indefinite

The asserted patents define "concave/convex… surface" as "the portion of the surface in proximity to the optical axis is concave/convex." But "in proximity to" is not a term of art and the asserted patents provide no guidance as to the bounds of the term, leaving a POSITA with no way to determine with reasonable certainty that a particular lens is within or outside the scope of the claims. *See* Shanley Report (Ex. 5) at 6-7. This renders the claim term indefinite. *Nautilus*, 572 U.S. at 901 (finding that a patent is indefinite "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention"); *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008) ("Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope."); *Prolifiq Software Inc. v. Veeva Sys. Inc.*, No. C 13-03644 SI, 2014 WL 3870016, at *6 (N.D. Cal. Aug. 6, 2014) (stating "a skilled artisan must know 'not only what falls inside the scope of the claim term, but also what falls outside of it'").[4]

"In proximity to" and "proximate to" are terms of degree. *See, e.g.*, *Vineyard Investigations. v. E. & J. Gallo Winery*, No. 1:19-cv-01482-JLT-SKO, 2023 WL 4409523, at *12 (E.D. Cal. July 7, 2023) ("The Court agrees that 'proximity' constitutes a term of degree.") (citing *Transdata, Inc. v. Centerpoint Energy Hous. Elec. LLC*, Nos. 6:10cv00557 RWS-JDL, 6:16cv407-JDL, 2016 WL 3172791, at *3 (E.D. Tex. June 7, 2016)). To be sufficiently definite, terms of degree must "provide objective boundaries" to a POSITA when "read in light of the specification

---

[4] *Nautilus* also "abrogated the use of a 'narrowing construction' to avoid a finding of indefiniteness." *Adaptix, Inc. v. Huawei Techs. Co. Ltd.*, 74 F. Supp. 3d 832, 838 (E.D. Tex. 2014) (cited by *Adaptix, Inc. v. Apple, Inc.*, Nos. 5:13-cv-01776-PSG, 5:13-cv-01777-PSG, 5:13-cv-01778-PSG, 5:13-cv-01844-PSG, 5:13-cv-02023-PSG, 2015 WL 332111, at *5 (N.D. Cal. Jan. 23, 2015)).

1  and the prosecution history." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed.

2  Cir. 2014) at 1370-71. In the asserted patents, no objective boundaries are provided, rendering the

3  definition indefinite.

4      Other courts have reached similar conclusions in similar circumstances. *See Geoscope*

5  *Techs. Pte. Ltd v. Apple Inc.*, No. 122-cv-01373-MSN-JFA, 2023 WL 4629539, at *12 (E.D. Va.

6  July 19, 2023) (holding "in proximity" indefinite); *Abdou v. Alphatec Spine, Inc.*, No. 12-CV-1804

7  BEN (RBB), 2014 WL 6611422, at *8-9 (S.D. Cal. Nov. 19, 2014) (holding "proximity"

8  indefinite); *In re Neurografox ('360) Pat. Litig.*, 201 F. Supp. 3d 206, 222–23 (D. Mass. 2016)

9  (holding "near said exciting and output arrangement" indefinite (citation omitted)).

10      Because "in proximity to" is not a term of art in optics or lens design, it is susceptible to a

11  multitude of contradictory meanings such that no one knows with reasonable certainty what it

12  means. As Dr. Shanley explains in his report, one person may think "in proximity to" means

13  within some specific distance of the optical axis (e.g., within .5 millimeters). Ex. 5 at 7:12-24.

14  Another may understand it to mean within a certain relative distance (e.g., within 10% of the

15  overall size of the lens). Someone else may understand it to mean within the paraxial region

16  (which is a term of art). Others may have other understandings. For any specific lens, these

17  individuals may apply different standards and use different values when applying those standards,

18  finding themselves in disagreement about whether a portion of a lens surface is in proximity to the

19  optical axis. The situation is on point with that in *Geoscope*, where earlier this year the Eastern

20  District of Virginia considered claim language directed to calibrating geolocation devices and

21  requiring calibration points to be "in proximity to" a geographic location. The court found that a

22  POSITA had no way of knowing if the claim language read on particular embodiments, because

23  the points could be anywhere from a foot away to a mile and "in proximity to," without more,

24  provided no guidance as to how close was close enough and how far was too far. *Geoscope*

25  *Techs.*, 2023 WL 4629539, at *12 (citation omitted).

26      The same is true here. Consider the predicament of a practitioner designing a lens

27  assembly similar to that in Figure 1A of the '767 patent. Claim 16 of that patent recites that the

28  image-side surface of the sixth lens element is concave. The designer observed that the patent

defines this to mean that the portion of that image-side surface in proximity to the optical axis is concave. The designer therefore tries to avoid the patent by ensuring her lens surface avoid that definition by not being concave in a portion proximate to the optical axis. Accordingly, she modifies the portion of the lens surface corresponding to the boxed portion of Figure 1A:



Fig. 1A

Within that boxed region, which covers a portion of the lens surface that is in absolute terms no more than a few millimeters long, she considers a possible alternative:



In this alternative, a portion of the lens surface in the immediate vicinity of the optical axis is planar. Above and below, but still within tenths or even hundredths of a millimeter of the optical axis, are portions that appear to be concave (recall, she is designing the boxed area of the image-side surface of the lens). Is that concavity "proximate" to the optical axis? She tries to draw a circle around the region that is "in proximity to the optical axis." But that is not a term of art. There is no guidance as to how that region should be defined. Is it limited to the planar region? Does it also include the concave regions? She simply does not know with reasonable certainty if her design would infringe these patents. No one of ordinary skill knows this with reasonable certainty. As such, these claims are indefinite. *See Geoscope Techs.*, 2023 WL 4629539, at *12; *Halliburton*, 514 F.3d at 1251 ("Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.").

### 3.    *The Court Can, and Should, Address Indefiniteness Now*

It is appropriate, fair, and efficient for the Court to decide both lexicographic claim construction and indefiniteness at the same time. As Motorola promised in the Joint Claim Statement, the indefiniteness argument is "straightforward and tightly coupled to the underlying claim construction." Dkt. 98 at 3:25-27. Because a POSITA does not know when a region is "in proximity to the optical axis," a POSITA does not know when a convex (or concave) region is sufficiently close to that optical axis to render the lens surface convex (or concave) under the patents' lexicographic definition.

Courts in this District have decided the legal question of indefiniteness at the claim construction stage (and have found claims indefinite), including in *Prolifiq Software Inc.*, 2014 WL 3870016, at *5 (finding claim indefinite because there was no objective standard for assessing it). *See also*, *e.g.*, *Sunstone Info. Def., Inc. v. F5, Inc.*, No. 21-cv-09529-YGR, 2023 WL 2746762, at *3 (N.D. Cal. Mar. 30, 2023) (finding indefiniteness at claim construction and listing some of the cases that did the same). These cases both came after the pre-*Nautilus* decision relied upon by Largan, *MasterObjects, Inc. v. Yahoo!*, Inc., No. C 11-02539 JSW, 2013 WL 6185475 (N.D. Cal. Nov. 26, 2013).

Contrary to Largan's arguments, deferring this decision will not change it. Motorola raises no arguments herein that were not presented in the Joint Claim Construction statement or the expert report of Dr. Shanley. Nor is this argument uniquely dependent on the report of Dr. Shanley: Motorola also relies on the underlying evidence presented in the 2022 testimony of the parties' respective experts. For example, in 2022 Dr. Bentley was asked "Does the area where the lens surface crosses the optical axis, is that the same as the portion of the surface in proximity to the optical axis?" Bentley Dep. Tr. (Ex. 6) at 79:1-3. She was unable to answer, responding "I mean proximity area, how big of an area are we talking about near the optical axis." *Id.* at 79:4-7 Similarly, Dr. Barbastathis testified that "proximate to the optical axis" and "in proximity to the optical axis" are not terms of "rigor or precision" with a definite meaning in the art. Barbastathis Report (Ex. 3) at 13:19-24.[5]

Largan has argued, at least thrice, that the Court should not address indefiniteness now. But Largan, which also has the benefit of having litigated in this field for years, has identified no evidence or testimony to show that "in proximity to the optical axis" has a definite meaning, despite offering its own technical expert and being on notice that Motorola contends that the term is indefinite.

The Court should recognize, now, that the patentee defined this term into indefiniteness.

    **4.**    ***Largan Does Not Dispute the Lexicographic Definition, and Instead Posits an Irrelevant and Incorrect Construction***

        **(a)**    **In Light of Lexicography, Largan's "plain and ordinary meaning" Analysis is Irrelevant**

Largan ignores the lexicographic definition entirely. *See* Dkt. 105, at 6-17. Instead, Largan urges the court adopt "Largan's construction of the term 'convex/concave . . . surface' ***because it is consistent with the plain and ordinary meaning of the term.***" *Id.* at 6 (emphasis added). As explained above, "[w]hen the patentee acts as its own lexicographer, that definition governs." *Cont'l Circuits LLC*, 915 F.3d 788, 796; *see also Nestle USA, Inc. v. Steuben Foods, Inc.*, 686 F. App'x 917, 919 n.1 (Fed. Cir. 2017) ("[E]ither the specification includes a binding definition of

---

[5] As explained, Dr. Barbastathis, who did not assume the language of the patents was lexicographic, went on to try and construe that language in light of other intrinsic and extrinsic evidence.

that term by way of lexicography, or it is to be read consistent with the plain and ordinary meaning.").

The Court does not need to further consider Largan's arguments in support of its proposed construction, because those arguments are irrelevant in light of the clear lexicographic definition.

**(b)    Largan's "plain and ordinary meaning" Analysis is Legally Flawed**

Even if the Court engaged in a plan and ordinary meaning analysis (which it should not, because of the lexicographic definition), Largan's analysis is incorrect.

In advancing its "plain and ordinary" meaning, Largan all but entirely ignores the intrinsic record, relying almost exclusively on its expert, Dr. Bentley, to support its construction.[6] This is contrary to the law. *See Phillips*, 415 F.3d at 1317); *01 Communique Lab'y, Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1298 (Fed. Cir. 2012).

The intrinsic record provides no support for Largan's assertion that "references to the concavity and convexity of the surface in the specification are unambiguous—the convexity and concavity is measured at the optical axis" (Dkt. 105 at 7). To the contrary, the only information about where to measure convexity are in the lexicographic definitions, which state that it should be assessed in the portion of the surface "proximate to" or "in proximity to" the optical axis. The patent nowhere states that measurement should be at a point (not a region) or that the point in question should be where the lens surface intersects the optical axis.

**(c)    Largan's Extrinsic Evidence is Irrelevant and Misleadingly Cited**

Furthering its avoidance of the specifications, Largan urges the Court to consider other extrinsic evidence in support of its proposed construction and to show the term is not indefinite. Largan cites (1) Motorola's previous pre-stay position in this case; (2) the fact that Motorola has charted invalidating prior art; (3) briefing in the IPRs associated with the asserted patents; (4) a

---

[6] Largan and Dr. Bentley admit that some region must be specified for a POSITA to make sense of what it means for a lens with an inflection point to be convex or concave. They propose that the region be the single point "where the surface intersects the optical axis." Dkt. 105 at 6-7; Second Bentley Report (Ex. 7) ¶¶ 22, 27. Dr. Bentley and Largan offer no intrinsic or other evidence that a POSITA would have had this understanding.

claim construction order from litigation involving different patents; and (5) a third-party patent. But Largan neglects to mention that in none of them did anyone argue for a lexicographic definition and in none of them did anyone argue that the lexicographic definition was indefinite.

**First** is the proposal that Motorola included in the pre-stay joint claim construction statement in this case. *See* Dkt. 55. To be clear, this has no estoppel effect, and Largan does not argue that it does. Regardless of what the parties may have been prepared to brief then, the Court must consider the facts and law before it now. Then, in June 2022, Largan was asserting six patents, only two of which were related to each other, and most of those patents did not define the term at issue here in a lexicographical manner, as the remaining two patents do. Thus, because there were six different sets of claims and five different specifications, in their first joint claim construction statement (Dkt. 55) as a matter of efficiency, the parties each provided a single proposed construction for "concave/convex . . . surface." Because lexicography was not applicable to the majority of the then-asserted patents, having a common construction would simplify issues for the jury down the line. *See* Barbastathis Report (Ex. 3) at 11:22-14:6. Notably, even then the parties and their respective experts disagreed as to the proper construction of "concave/convex . . . surface," especially as to the location where the concavity or convexity of the lens surface should be assessed. *See* Dkt. 55.

Now, Largan asserts claims from only the '767 and '948 patents, and each of those patents provides an explicit definition for "concave/convex . . . surface." The relevant law is clear, and its application is straightforward. The (indefinite) lexicographic definitions apply.

**Second**, Largan argues that because Motorola charted invaliding prior art references against indefinite claims, Motorola has somehow waived or made an admission about those indefinite claims. Not so. This Court's Patent Local Rules, as well as the Federal Rules of Civil Procedure, contemplate and allow pleading in the alternative. Indeed, defendants in patent litigation in this District (any many others) routinely include both prior art invalidity theories and indefiniteness invalidity theories in their invalidity contentions. *See, e.g.*, *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010) (noting the district court held the patents invalid as indefinite and, in the alternative, invalid as anticipated, implying that defendant

1    presented evidence of both indefiniteness and, in the alternative, invalidity by anticipation);

2    *LifeScan Scot., Ltd. v. Shasta Techs., LLC*, No. 11-cv-04494-WHO, 2016 WL 7732710, at *1

3    (N.D. Cal. Mar. 8, 2016) ("Defendants move for summary judgment because the claims at issue

4    are invalid as obvious and/or indefinite . . . .").

5          Moreover, the relevant surfaces in the prior art references (and in the IPRs) all have the

6    requisite convexity or concavity in a region including the optical axis. As such, they are not

7    affected by the indefinite aspect of the lexicographic definition, which is introduced by the

8    definition of these terms as including regions "proximate to" the optical axis. The indefiniteness

9    associated with the lexicographic definition is brought out by applying it to surfaces in which the

10   recited curvature is not **at** the optical axis but is instead in some other region. Again, that is

11   because a POSITA has no way of knowing if the curvature is close enough to be "proximate to" or

12   "in proximity to" the optical axis.

13         **Third**, Largan points to IPR filings. But under the relevant statutes, the Patent Office

14   *cannot* rule on indefiniteness in IPRs. 35 U.S.C. § 314; *Cuozzo Speed Techs., LLC v. Lee*, 579

15   U.S. 261, 274-75 (2016). Thus, in the IPRs, no lexicographic construction or indefiniteness

16   argument was proposed or considered by the Patent Office.

17         **Fourth**, Largan presents a claim construction order from a different case. *See* Dkt. 105-14

18   (Ex. M to Krzeminski Decl.) (including claim construction order from *Largan Precision Co. v.*

19   *Genius Electronic Optical Co.*, No. 13-cv-02502-JD, 2014 WL 5358426 (N.D. Cal. Oct. 20,

20   2014)).  But this order is irrelevant because it discussed different patents and different issues.  And

21   although Largan says that in this order the court rejected Motorola's argument (Dkt. 105 at 2:4-6),

22   is most certainly did not: Motorola was not a party to that case, and no one made the arguments

23   Motorola now makes.

24         In *Genius*, there were five asserted patents—none of which are the asserted patents in this

25   case. Motorola does not know why the parties did not argue about whether the convex/concave

26   term was lexicographically defined in those patents, nor is it clear there was the same issue of

27   indefiniteness with respect to those different patents from the two at issue here.

28

The *Genius* order conducts a plain and ordinary meaning analysis to the "concave/convex" term, because that is what the Court was asked to do by the parties to that case. It concluded that those different patents' use of various language in reference to the regions of convexity and concavity did not change a POSITA's understanding of the claim language. Here, that is not the question. The question is whether the lexicographic definition itself is definite. That was not before the *Genius* court and was not addressed in the order.

**Fifth**, Largan cites to the use of "in proximity" in a third-party patent. *See* Dkt. 105, at 16:1-14 (citing to U.S. Patent No. 11,169,362 (Dkt. 105-13)). Again, this extrinsic evidence is well beyond the scope of what should be considered. But even if relevant, this use of "in proximity" is neither lexicographic nor problematic. The paragraph, in full, is:

> As used herein, the paraxial area refers to an area in proximity to the optical axis. If the surface of a lens is a convex surface and the position of the convex portion of the convex surface is not defined, at least the portion of the surface of the lens in the paraxial area is the convex portion; if the surface of a lens is a concave surface and the position of the concave portion of the concave surface is not defined, at least the portion of the surface of the lens in the paraxial area is the concave portion. The surface closest to the object in each lens is referred to as the object-side surface, and the surface closest to the image plane in each lens is referred to as the image-side surface.

The specification of the third-party patent states that for its purposes, convexity and concavity are to be assessed in the paraxial region. As every expert in <u>this</u> case has explained, the paraxial region is a well-defined region that is defined not by proximity to the optical axis but by the behavior of rays of light. This paragraph does not change that. It merely notes that the paraxial region of a lens surface is in proximity to the optical axis of that lens. This does not mean that a POSITA would know the metes and bounds of "proximity," and does not, for example tell us what other regions may be also proximate or when a region stops being proximate to the optical axis.

### 5. *Dr. Shanley's Report is Admissible and Helpful*

Largan asserts that Dr. Shanley does not qualify as an "expert" in the field. But Dr. Shanley plainly qualifies as a POSITA under the very standard Largan propounds. In its brief, Largan sets out its position as to the skills and experience of a POSITA: "a bachelor's degree in physics or optics, and at least three years of experience in the field of optical design, or its equivalent experience." Dkt. 105 at 7:3-6 (citing 2022 Bently Report). Motorola sets out a slightly

1    different position. *See* Barbastathis Report (Ex. 3) at 5. Regardless, a simple review of Dr.

2    Shanley's CV establishes that he qualifies as a POSITA under either. *See* Shanley Report (Ex. 5)

3    at Exs. A-D (Shanley CV).

4        Largan asserts that Dr. Shanley was "shielded" from information that contradicted his

5    opinion. Not so. Dr. Shanley was asked to opine on the lexicographic definition set forward in the

6    specifications. No limitations were placed on what he could review. Largan apparently complains

7    that he did not address previous analysis by others of the "convex/concave … surface" term, but

8    this misses the mark. Dr. Shanley was opining on the lexicographic definition, not on other

9    interpretations of the term.

10       Largan also makes much ado about Dr. Shanley and his co-inventors using the word

11   "proximity" numerous times in a patent application. That application is directed to a control

12   mechanism for a light source. Dkt. 105-12 (Ex. K to Declaration of Krzeminski), Abstract. The

13   control mechanism can accept input from "a voice recognition, motion detection or ***proximity***

14   detection device." *Id.* ¶ 93 (emphasis added). Not surprisingly, the application goes on to include

15   considerable disclosure about the nature and use of proximity detection devices. Dr. Shanley and

16   his co-inventors do not use "proximity" to define a region of a lens, only to refer to the behavior of

17   a proximity sensor. This includes in paragraph 357 of the application, where, quite reasonably in

18   context, "proximate" is used to refer to a user's hands being close enough to be detected by the

19   proximity sensor.

20       The Court should reject Largan's effort to discredit Dr. Shanley's testimony.

21       **6.    *Conclusion as to "concave/convex … surface"***

22       The asserted patents each include clear lexicographic definitions of the disputed term.

23   They define "concave/convex . . . surface" as "the portion of the surface [in proximity to /

24   proximate to] the optical axis is concave/convex." The lexicographic definitions require a POSITA

25   to know whether a portion of a lens surface is "proximate to" or "in proximity to" the optical axis

26   of a lens. But "in proximity to" is not a term of art, is given no meaning by the patents, and is

27   amenable to inconsistent understandings. The convex/concave term is therefore indefinite.

28

1
2

**B.    Term 2: "a fifth lens element with positive refractive power having a convex image-side surface, and at least one of an object side-surface and the image-side surface thereof being aspheric" ('767 patent, claim 16)**

3
4
5

| Largan's Proposal | Motorola's Proposal |
|---|---|
| No construction necessary. Plain and ordinary meaning. | "a fifth lens element with positive refractive power having a convex image-side surface, a concave object-side surface, and at least one of an object side-surface and the image-side surface thereof being aspheric" |

6

This second term should be construed to properly limit the scope of the claimed invention

7

to what is actually disclosed and enabled. In particular, the '767 patent only discloses and enables

8

lens assemblies having a fifth lens element with a ***concave object-side surface***. Even though not

9

expressly written in the claim, under the governing law this feature is therefore required to be

10

present in the claim by virtue of the statements in the specification. Only Motorola's proposed

11

construction reflects the proper scope of the term.

12

The Federal Circuit has held that where "every embodiment and teaching in the

13

specification" teaches a specific configuration or structure of claim elements and remains silent

14

otherwise as to alternative working embodiments, a broader definition is improper. *See Rivera v.*

15

*Int'l Trade Comm'n*, 857 F.3d 1315, 1320-21 (Fed. Cir. 2017). Here, each of the nine

16

embodiments disclosed in the '767 patent explicitly teaches "a plastic fifth lens element 150 with

17

positive refractive power *having a concave object-side surface* 151 and a convex image-side

18

surface 152." '767 patent (Ex. 1), 7:8-10 (discussing Embodiment 1 and corresponding Figures 1A

19

and 1B) (emphasis added); *see also id.* at 10:47-49 (Embodiment 2 and corresponding Figures 2A

20

and 2B); 13:21-23 (Embodiment 3 and corresponding Figures 3A and 3B); 16:17-19 (Embodiment

21

4 and corresponding Figures 4A and 4B); 18:30-32 (Embodiment 5 and corresponding Figures 5A

22

and 5B); 20:66-21:1 (Embodiment 6 and corresponding Figures 6A and 6B); 24:11-13

23

(Embodiment 7 and corresponding Figures 7A and 7B); 26:26-28 (Embodiment 8 and

24

corresponding Figures 8A and 8B); 28:57-59 (Embodiment 9 and corresponding Figures 9A and

25

9B). Every figure in the '767 patent shows a fifth lens element with a concave object-side surface.

26

Nothing in the prosecution history suggests that the inventors of the '767 patent possessed

27

a lens assembly having a fifth lens element without a concave object-side surface.

28

1    Moreover, Dr. Bentley's testimony suggests that the specific shapes of the lens element in

2    the nine embodiments are core to the claimed invention. In her report in support of Largan's

3    response to the '767 IPR petition, she states that the specification "provides optical systems each

4    having six lens elements . . . that utilize specific shapes, thicknesses, individual lens focal lengths,

5    and other material properties. This unique combination is what provides the optimal image quality

6    and very short total track length required for us in a mobile device." Ex. 8 ¶ 33. She explains that

7    "[s]uch selection and arrangement of lens elements is the result of the skilled design of the

8    inventors to cover [certain] objectives," citing only to the same nine embodiments mentioned

9    above. *Id.* ¶ 54. She further states that "[t]his cannot be done by a simple or arbitrary selection of a

10   six-lens assortment, nor was it a simple undertaking to choose and re-arrange those lenses in a way

11   that meets the requirements of the claimed lens prescription." *Id.*

12   Courts, including those in this district, have found such evidence of the limited scope of a

13   claimed invention persuasive, construing claim terms to encompass only what was properly

14   disclosed and described. *See Gamevice, Inc. v. Nintendo Co., Ltd.*, No. 18-cv-01942-RS, 2023 WL

15   2500449, at *4 (N.D. Cal. Mar. 14, 2023) ("The specification further supports the contention that

16   the computing devices taught by the '119 patent are narrower . . . . As Nintendo observes, every

17   depiction of a computing device in the '119 patent shows a device with a screen and a back."), *on*

18   *reconsideration*, *ruling not invalid in part*, No. 18-cv-01942-RS, 2023 WL 4032009 (N.D. Cal.

19   June 14, 2023). This is consistent with Federal Circuit law. *See Rivera*, 857 F.3d at 1320

20   (construing the term pod as being structurally separate from the receptacle because "[t]his

21   relationship between the pod adaptor assembly, the receptacle (i.e., cartridge) and the pod carries

22   through every embodiment").

23   In *Rivera*, the Federal Circuit further found persuasive that without the proposed limiting

24   feature, "the assemblies shown in the '320 patent [do] not function, because inserting loose-grain

25   coffee or loose-leaf tea into the containers shown in the embodiments would clog the brewing

26   chamber." *Rivera*, 857 F.3d at 1321. Following this analysis, the *Gamevice* court also construed

27   the relevant claim term to include the proposed limiting feature because "it is unclear how the

28   invention described in the [patent] would function" without it. *Gamevice*, 2023 WL 3500449, at

*4 (noting that attempting to use the device without a screen or back "would likely cause the invention not to function"). Here, just as in *Rivera* and *Gamevice*, the claimed embodiments of the '767 patent—i.e., disclosed embodiments 1-9—would not function as intended without the fifth lens element having a concave object-side surface.

As evidenced by each of the figures, the lens elements are consistently arranged such that at least the fourth and fifth lens elements are packed tightly together, in a nested arrangement. *See* '767 patent (Ex. 1) figs. 1A-9A. This is because, as the specification makes clear, one of the main purposes of the '767 patent's invention is to make it such that "the total track length of the image capturing lens assembly can be reduced." *Id.* at 2:22-24; *see also id.* at 1:40-43 (explaining that the invention seeks to solve the need for "an image capturing lens assembly that features better image quality and is compact while maintaining a moderate total track length"). Largan has repeatedly represented both in this litigation and the related IPR proceeding that a reduction in total track length is the very purpose of the '767 patent's invention. *See* Dkt. 105 at 7 ("Compared to conventional lens assemblies, the lens assemblies of the Asserted Patents have a reduced total track length (distance between the object-side surface of the first lens element and the image sensor), which results in a smaller size ideal for use in high-end, portable consumer electronics such as smartphones."); Patent Owner Preliminary Response in Case IPR2022-01023 (Ex. 9) at 7 ("The '767 patent is directed to maximizing compactness in camera lens systems designed for us in smartphones, without sacrificing image quality. Largan was the first to discover that, with the right combination of six lens elements, it could maintain . . . values necessary for superior image quality while achieving a very short track length . . . .").

Here, the total track length of each of the embodiments disclosed would have to *increase* should the fifth lens element not have a concave object-side surface due to the snug fit of the lenses. *See* '767 patent (Ex. 1) figs. 1A-9A. This would be directly contradictory to the very purpose and intended function of the claimed invention. Although the specification contains a single conclusory (and possibly mis-drafted) assertion that "[w]hen the fifth lens element has a convex object-side surface, the total track length can be reduced favorably," it does not illustrate or otherwise disclose such a solution or explain under what circumstances or arrangements of

1  lenses one could be implemented. Rather, it is part of a litany of various structures for lens

2  elements and their purported benefits, none of which include an explanation of whether or how

3  such structures may be implemented. *Id.* at 2:37-50

4      The claims cannot be construed to cover more than what is disclosed and enabled.[7] *See*

5  *Rivera*, 857 F.3d at 1322; *Nat'l Recovery Techs.,* 166 F.3d at 1196 ("The scope of the claims must

6  be less than or equal to the scope of the enablement."). The claim term should be construed as

7  proposed by Motorola.

8  **VI.    CONCLUSION**

9      For at least the reasons set forth above, the Court should find that the disputed

10  "convex/concave . . . surface" term is indefinite and that the disputed "fifth lens element . . ." term

11  should be construed as "a fifth lens element with positive refractive power having a convex image-

12  side surface, a concave object-side surface, and at least one of an object side-surface and the

13  image-side surface thereof being aspheric."

14

15  DATED: December 18, 2023          Respectfully submitted,

16                                    KILPATRICK TOWNSEND & STOCKTON LLP

17

18                                    By: */s/ April E. Isaacson*
                                      _____
19                                    STEVEN D. MOORE
                                      APRIL E. ISAACSON
20                                    Attorneys for Defendant
21                                    **MOTOROLA MOBILITY LLC**

22

23

24

25

26

27
_____
[7] For all the reasons discussed, to permit a broader construction than that which Motorola proposes
28  here would run afoul of the written description and enablement requirements of Section 112 and
    thereby result in an indefinite and invalid claim.

1

**PROOF OF SERVICE**

2

3

     I am employed in the County of San Francisco, State of California. I am over the age of eighteen years and not a party to this action. My business address is Kilpatrick Townsend & Stockton LLP, Two Embarcadero Center, Suite 1900, CA 94111.

4

5

On the date set forth below, I served the foregoing document entitled **MOTOROLA'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** on the interested parties in this action, as follows:

6

**ATTORNEYS FOR PLAINTIFF LARGAN PRECISION CO., LTD.**

7

8

9

10

11

12

13

**MASCHOFF BRENNAN GILMORE &
ISREALSEN, PLLC**
Sterling A. Brennan
Thomas Philip Krzeminski
Erynn L. Embree
100 Spectrum Center Drive, Ste. 1200
Irvine, CA 92618
Telephone: 949.202.1900
Facsimile: 949.453.1104
Email: sbrennan@mabr.com
Email: tkrzeminski@mabr.com
Email: eembree@mabr.com
Email: litdocketing@mabr.com

Kirk R. Harris (*pro hac vice*)
L. Rex Sears
111 South Main Street, Suite 600
Salt Lake City, UT 84111
Telephone: 801.297.1850
Facsimile: 435.252.1361
Email: kharris@mabr.com
Email: rsears@mabr.com

14

15

    ☐ [By E-Mail]  I caused said document to be sent by electronic transmission to the e-mail addresses indicated for the parties listed above.

16

17

18

19

    ☐ [By First Class Mail]  I am readily familiar with my employer's practice for collecting and processing documents for mailing with the United States Postal Service. On the date listed herein, following ordinary business practice, I served the foregoing document at my place of business, by placing true copies thereof, enclosed in sealed envelopes, with first class postage thereon fully prepaid, for collection and mailing with the United States Postal Service where they would be deposited with the United States Postal Service that same day in the ordinary course of business.

20

21

    ☐ [By Overnight Courier]  I caused each envelope to be delivered by a commercial carrier service for overnight delivery to the offices of the addressees.

22

23

    ☒ (BY E-FILE) I caused the aforementioned document(s) to be filed with the Court's E-File system which will provide notice on all counsel deemed to have consented to electronic service. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing document by mail on this day.

24

25

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on December 19, 2023.

26

27

            */s/ Stephanie DM Pearson*
            Stephanie DM Pearson

28

22877790V.13

MOTOROLA'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 4:21-CV-09138-JSW