UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LARGAN PRECISION CO, LTD,
Plaintiff,

v.

MOTOROLA MOBILITY LLC.,
Defendant.

Case No. 21-cv-09138-JSW

**CONDITIONALLY SEALED**

**ORDER RESOLVING MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO EXCLUDE EXPERT OPINIONS AND TESTIMONY**

Re: Dkt. Nos. 250, 255, 256, 258, 261

This matter comes before the Court upon consideration of: (1) the motion for summary judgment of infringement and validity filed by Plaintiff Largan Precision Co., Ltd. ("Largan"); (2) the motion for summary adjudication of issues filed by Defendant Motorola Mobility LLC ("Motorola"); (3) Largan's motion to exclude the testimony and opinions of Motorola's expert Tom D. Milster, Ph.D. ("Dr. Milster"); (4) Largan's motion to exclude the testimony and opinions of Motorola's expert George Barbastathis, Ph.D. ("Dr. Barbastathis"); and (5) Motorola's motion to strike unauthenticated foreign language documents submitted with Largan's motion for summary judgment.[1]

The Court has considered the parties' papers, relevant legal authority, the record in this case, and oral argument, and its rulings are set forth in the body of this Order.

//

//

[1] Largan also alleged Motorola infringed United States Patent No. 8,310,767 (the "'767 Patent"). That patent is no longer at issue. Accordingly, the Court DENIES AS MOOT all motions relating to the '767 Patent and DENIES AS MOOT Largan's objections to Motorola's reply evidence (Dkt. No. 310).

## BACKGROUND[2]

Largan researches, develops, designs, and produces high-end imaging lenses, optical lens modules, and optoelectronic components, including lenses for mobile phone cameras, and it owns United States Patent No. 9,784,948 ("the '948 Patent") "Imaging Lens System." (Dkt. No. 261-1, Declaration of Sterling A. Brennan in Support of MSJ ("Brennan MSJ Decl."); Dkt. No. 261-5, Brennan MSJ Decl., Ex. 4 ('948 Patent).) Motorola sells mobile phones that include cameras or camera systems.

Claims 1, 4, and 5 of the '948 Patent recite:

> 1. An imaging lens system including, in order from an object side to an image side:
>
> a first lens element having a concave image-side surface;
>
> a second lens element;
>
> a third lens element with negative refractive power having a convex object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric;
>
> a fourth lens element with positive refractive power having a convex image-side surface; and
>
> a fifth lens element with negative refractive power having a convex object-side surface and a concave image-side surface, the object-side and image-side surfaces thereof being aspheric, each of the object-side and image-side surfaces thereof being provided with at least one inflection point;
>
> wherein there are a total of five lens elements in the imaging lens system, and a gap exists between every two adjacent lens elements along an optical axis of the imaging lens system.
>
> ...
>
> 4. The imaging lens system according to claim 1, wherein the first lens element has positive refractive power.
>
> 5. The imaging lens system according to claim 4, wherein the second lens element has negative refractive power.[3]

---

[2] The following facts are undisputed, unless noted.

[3] On May 7, 2024, the Court issued an Order construing the disputed claim terms in the '948 Patent. *Largan Precision Co. Ltd. v. Motorola Mobility LLC*, 2024 WL 2060864, at *1-2 (N.D. Cal. May 7, 2024).

Largan contends that Motorola's lens model AAC165174 (the "Accused Lens") infringes claim 5 of the '948 Patent.[4] Largan also contends Motorola uses the Accused Lens in ten mobile phone models (the "Accused Products"). (*See, e.g.,* Dkt. No. 260-2, Brennan MSJ Decl. Ex. 5 (Bentley Opening Report, ¶ 538).)

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

### A. Applicable Legal Standards.

#### 1. Motions to Exclude Expert Testimony.

Largan moves to exclude Motorola's expert testimony pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under Rule 702, scientific, technical, or otherwise specialized knowledge is admissible if the proponent of the evidence demonstrates that it is more likely than not the evidence will: assist the trier of fact to understand the evidence or determine a fact in issue; is based on sufficient facts or data; and is the product of reliable methods or principles that have been applied reliably to the facts of the case. *See* Fed. R. Evid. 702(a)-(d). Under *Daubert* and its progeny, a district court's inquiry into the admissibility of expert testimony "is a flexible one." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (citation omitted). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (cleaned up).

"[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* at 564 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (cleaned up). A court may consider "whether the theory or technique employed by the expert is generally accepted in the scientific community;

[4] This lens was manufactured by AAC Technologies at Motorola's request and to its specifications.

whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable." *Daubert v. Merrell Dow Pharms.*, Inc., 43 F.3d 1311, 1316 (9th Cir. 1995).

"Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564 (citation omitted). The judge should "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether [their] testimony has substance such that it would be helpful to a jury." *Id.* at 969-70. "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999).

**2. Motions for Summary Judgment.**

"A party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may not weigh evidence or make determinations of credibility. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248-49. A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either

negates an essential element of the non-moving party's claims or shows that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court also "views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006) (citing *Anderson*, 477 U.S. at 252-53). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (cleaned up). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B. The Court Denies the Motion to Exclude Dr. Milster.**

Motorola engaged Dr. Milster to provide opinions on obviousness, and he opines that the '948 Patent is invalid as either anticipated by or obvious over U.S. Patent Publication No. US 2007/0236811 A1 ("Mori"). Largan moves to exclude Dr. Milster's opinions and testimony that are based on information derived from current versions of the lens design software Zemax or CODE V. It argues his opinions are not reliable because the current versions of the programs would not provide information that was available to a person of ordinary skill in the art ("POSITA") at the time of the invention claimed.

Dr. Milster has "worked in lens system design and the field of optical engineering for over thirty years." (Dkt. No. 250-1, Declaration of R. Parrish Freeman ("Freeman Decl."); Dkt. No. 250-2, Freeman Decl., Ex. 1 (Milster Report, ¶ 6).) Dr. Milster stated "a POSITA would have known how to use lens design software such as Code V, Oslo, and Zemax, and would have taken a lens design course or had equivalent training. A POSITA would have regularly used such software to create new lens designs, often using pre-existing lens designs as a starting point and then performing routine optimizations to reach a desired design." (*Id.*, ¶ 66.)

United States District Court
Northern District of California

Dr. Milster has used Zemax since at least 1996 and stated the "Zemax modeling and lens data described in this [Report rely] on Zemax functionality available in 2010 and early 2011." (Freeman Decl., Ex. 1 (Milster Report ¶ 154); *see also* Dkt. No. 250-3, Freeman Decl., Ex. 2 (Milster Depo. at 56:3-10).) Dr. Milster acknowledged that he does not regularly use CODE V and has not since he was a student in the 1980's but also states he has experience with it. (Freeman Decl., Ex. 1 (Milster Report ¶ 156).) He also stated, "the command line language for CODE V has not changed much since [the 1980's], but the output and GUI input has." (*Id.*.) On this record, the Court concludes that Dr. Milster is qualified to offer opinions based on Zemax and CODE V. Dr. Milster also states that he formed his opinions based on the experience of a POSITA "from the time period of the invention of" the Asserted Patents. (*Id.* ¶ 68; *see also id.* ¶¶ 69-70.)

Largan also argues Dr. Milster's opinions should be excluded because he did not disclose every step and decision point that he went through to arrive at his opinions. (*See, e.g.,* Freeman Decl., Ex. 2 (Milster Depo at 185:10-17).) Dr. Milster disclosed the constraints he used, and Largan did not raise any issues about an incomplete expert disclosure during discovery. The Court concludes these objections do not impact Dr. Milster's reliability for purposes of resolving the motion for summary judgment.

Largan also argues Dr. Milster's testimony should be excluded because he did not apply the clear and convincing standard to form his opinions. Dr. Milster included accurate statements of the burden of proof and the relevant legal standards for analyzing obviousness in his Report. (Milster Report ¶¶ 24, 33-53.) The Court will not exclude Dr. Milster's opinions on this basis. *See, e.g., Oyster Optics, LLC v. Ciena Corp.*, No. 17-cv-05920-JSW, 2023 WL 7027507, at *3 (N.D. Cal. 2023) (denying *Daubert* motion based on similar objection).

The Court DENIES the motion to exclude Dr. Milster's testimony.

//

//

//

//

### C. The Court Denies the Motion to Exclude Dr. Barbastathis.[5]

#### 1. Qualifications.

Motorola retained Dr. Barbastathis to rebut Dr. Bentley's opinion on infringement. Largan argues Dr. Barbastathis does not have knowledge, skill, or experience in the field of optical lens assemblies for smartphones. The parties agree that a POSITA "in the context of the Asserted Patents, would have had a bachelor's degree in physics or optics, and at least three years of experience in the field of optical design, or its equivalent experience." *See Largan*, 2024 WL 2060864, at *3. Having adopted that definition, the Court notes it is not limited to someone with experience in the field of optical lens assemblies for smartphones.

Dr. Barbastathis has undergraduate degrees in electrical and computer engineering as well as a master's degree and a Ph.D. in electrical engineering. (Dkt. No. 255-1, Declaration of Thomas Krzeminski ("Krzeminski Decl."); Dkt. No. 254-2, Krzeminski Decl., Ex. 1 (Barbastathis Report, ¶¶ 3, 6 & Ex. A, *curriculum vitae*).) Dr. Barbastathis is a Fellow of the Optical Society of America, has supervised Ph.D. and post-doctoral students in optical engineering, and has published peer-reviewed articles on optical engineering. (*See generally* Barbastathis *curriculum vitae*.) The Court concludes he has the requisite experience.

Largan also challenges Dr. Barbastathis's qualifications based on his purported inability to use and understand Zemax software. Dr. Barbastathis testified he had not used Zemax or Code V to analyze or design smartphone lens assemblies. (Dkt. No. 254-3, Krzeminski Decl., Ex. 3 (Barbastathis Depo. at 150:14-25).) He also testified that although he was not familiar with some of the codes for Zemax, he could identify information "in the graphical interface." (*Id.* at 156:2-157:19; *see also* Dkt. No. 276-1, Declaration of Kathleen Geyer ("Geyer Decl."); Dkt. No. 275-4, Geyer Decl., Ex. A (Barbastathis Depo. at 160:10-23).) Largan is free to cross-examine Dr.

---

[5] The parties stated the Court should resolve the section of Largan's motion addressing Dr. Barbastathis's opinions on non-infringing alternatives. (Joint Notice at 2:1-3.) However, those opinions relate to Motorola's motion for summary judgment on lost profits, which is no longer at issue. Largan also moved to exclude Dr. Barbastathis's opinion on comparable licenses, an issue not covered in the parties' motions for summary judgment. The Court DENIES the motion to exclude this opinion without prejudice.

Barbastathis on those issues, but the Court concludes that this testimony does not render him unqualified to render his opinions.

The Court concludes Motorola has met its burden to show Dr. Barbastathis has the requisite experience and qualifications.

**2. Methodology.**

Largan also argues the Court should exclude Dr. Barbastathis because he did not compare the Accused Products to Claim 5 and did not test or conduct any technical analyses of the Accused Products. That is undisputed, but not necessarily dispositive. *Cf. Liquid Dynamics Corp. v. Vaughn Co., Inc.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006) ("A patentee may prove direct infringement or inducement of infringement by either direct or circumstantial evidence.").

Dr. Barbastathis opines that Dr. Bentley's methods would not be "sufficient to demonstrate infringement." (Krzeminski Decl., Ex. 1, (Barbastathis Report, ¶ 83).) For example, he criticized Dr. Bentley's decision to test a single lens assembly because "significant variation between individual units of a particular model of lens assembly is expected. Thus, without more information as to AAC's manufacturing processes, there is simply no basis for concluding that testing a single unit of AAC 165174 assembly could show that each and every unit of AAC 165174 has the same characteristics." (*Id.* ¶ 84.)

Largan argues that Dr. Barbastathis withdrew his critique of Dr. Bentley's methodology at his deposition. The record is not so clear. For example, when he was questioned about his criticisms of Dr. Bentley's analysis on the '948 Patent, he testified: "I think about the passive voice, but we addressed that earlier today. You told me what Dr. Bentley testified. I take that at face value. I mean, I did criticize all of this in my report, but that was before our conversation." (Krzeminski Decl., Ex. 3 (Barbastathis Depo. at 65:18-66:9, 204:5-16).) Dr. Barbastathis also detailed why his concerns about calibration issues were important. (Dkt. No. 275-4, Geyer Decl., Ex. A (Barbastathis Depo. at 71:20-75:18, 86:8-18).) The Court concludes Largan has not met its burden to show Dr. Barbastathis's opinions on non-infringement are unreliable.

Accordingly, The Court DENIES Largan's motion to exclude Dr. Barbastathis.

//



United States District Court
Northern District of California

United States District Court
Northern District of California

**D. The Court Denies Motorola's Motion to Strike Foreign Documents.**

Motorola moves to strike untranslated calibration stickers and lens assembly drawings that are discussed by Dr. Bentley in her infringement analysis. "District courts routinely exclude from evidence documents in other languages submitted without certified translations[.]" *Pitz v. Gonzalez*, 25-cv-4454-LJC, 2025 WL 2434240, at *4 (N.D. Cal. Aug. 22, 2025); *accord Maslic v. ISM Vuzem d.o.o.*, No. 21-cv-02556-BLF, 2024 WL 3408217, at *6 (N.D. Cal. July 11, 2024).

The relevant lens assembly drawings for the '948 Patent are: OFILM00000071, QTECH00000007, and TSPRECISION00000031. (Brennan MSJ Decl., Ex. 5 (Bentley Opening Report, ¶ 542; Appendix ("Appx.") K, ¶¶ 3-5.) Although portions of those drawings are in Chinese, the portions discussed in the appendices to Dr. Bentley's Report are in English. There is nothing in the record to suggest the English text are translations. The Court DENIES the motion and will not strike Bentley Appendix K.

Motorola also moves to strike photographs of calibration stickers from a Yxlon Cheetah EVO microCT scanner and a Nikon measuring microscope. (Dkt. 297-1 through 297-3, Declaration of Erynn Embree ("Embree Decl."), Exs. A-B.) The relevant information on those stickers is in Chinese, and Largan has not provided translations. Dr. Bentley testified that she spoke with Largan personnel about the content of the calibration stickers, and Motorola moves to strike that information as inadmissible hearsay. On summary judgment, the Court does "not focus on the admissibility of the evidence's form." *Sandoval*, 985 F.3d at 666 (quoting *Fraser v. Goodale,* 342 F.3d 1032, 1036 (9th Cir. 2003)). Instead, it focuses on "the admissibility of its contents." *Id.* "If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id.* The burden is on Largan to show "the material is admissible as presented or to explain the admissible form that is anticipated." (Fed. R. Civ. P. 56, Adv. Comm. Note, 2010 Amendment to Subdivision (c)(2)).

Because the photographs of the calibration stickers are not necessary to resolve the motion,

the Court DENIES AS MOOT Motorola's motion to strike Exhibits A and B to the Embree Declaration. The Court also has considered the parties' positions on the contents of the photographs and is not persuaded that Largan will be unable to present the information in an admissible form if the case proceeds to trial.

Accordingly, the Court DENIES Motorola's motion to strike paragraphs 538 through 574 of Dr. Bentley's Report. The Court also DENIES the motion strike any portions of Appendix K or L that are based on information from those machines.

**E. The Court Denies Largan's Motion for Summary Judgment of Infringement.**

"A determination of infringement requires a two-step analysis," the first of which is to construe the claims. *Terlep v. Brinkman Corp.*, 418 F.3d 1379, 1381 (Fed. Cir. 2005) (cleaned up). That step is complete. At the second step, "the claim as properly construed must be compared to the accused device or process." *Id.* To prevail on the infringement analysis Largan must demonstrate "the presence of every element or its substantial equivalent in" the Accused Lens. *Id.* at 1384. It would then need to establish that the Accused Products contain the Accused Lens.

As discussed above, Dr. Bentley reviewed Motorola's lens outline drawings for the Accused Lens. (Brennan MSJ Decl., Ex. 5 (Bentley Opening Report, ¶ 542; Appx. K, ¶¶ 3-5.) According to Dr. Bentley, these drawings "show (along with other values) the effective focal length (EFL), total track length (TTL), and image height." (*Id.*, ¶ 542; Appx. K, ¶ 2; Appx. L, ).) Dr. Bentley then used those values to check the accuracy of measurements for the Accused Lens. (*Id.*, ¶ 542.) Dr. Bentley also conducted independent testing by tearing down the Accused Lens at Largan's facilities in Taiwan. (*Id.* ¶ 543 & Appx. L (detailing teardown process).)

Dr. Barbastathis did not conduct tests to form his opinion regarding non-infringement. Instead, he critiqued Dr. Bentley's opinions. For example, Dr. Barbastathis noted it was not clear that Dr. Bentley personally conducted or oversaw the teardown process or that she personally conducted or oversaw calibration. In his opinion, those facts are significant because it would prevent a POSITA from being confident that Dr. Bentley's results are reliable and accurate. (Krzeminski Decl., Ex. 2 (Barbastathis Report, ¶¶ 75-85).)

United States District Court
Northern District of California

Dr. Bentley admits she did not personally tear-down the Accused Lens or calibrate the instruments and testified that she directed a Largan employee to photograph each step, which allowed her to observe the testing. Dr. Bentley testified that she was present for the entire tear-down process and directed the Largan employees who conducted the tear down on "what to do and what to measure and how to document it." (Dkt. No. 254-4, Krzeminski Decl., Ex. 5 (Bentley Depo. at 145:21-147:10).) Dr. Bentley also directed a Largan employee to photograph the calibration records "to show when [the equipment] was last calibrated and by who." (*Id.* at 150:4-10).) Dr. Bentley testified she spoke with Largan employees in Taiwan to understand the calibration stickers "and to verify that each machine had been properly calibrated" and admitted that some of the lens drawings she reviewed had been translated. (Dkt. No. 297-7, Declaration of Dr. Julie Bentley, ¶¶ 5, 9; Dkt. No. 297-4, Embree Decl., Ex. C (Bentley Depo. at 157:21-24).)[6] According to Dr. Bentley, the numbers and values she obtained "are standard for the field and are what [she] would be expect to be available from those types of documents." (Bentley Decl., ¶ 9.)

The Court concludes that Dr. Barbastathis has provided opinions that would permit a reasonable jury to disagree with Dr. Bentley's opinions on infringement. It will be up to the fact finder to determine which expert is more credible.

Accordingly, the Court DENIES Largan's motion for summary judgment of infringement.

### F. The Court Grants, in Part, and Denies, in Part, Largan's Motion for Summary Judgment on Validity.

Largan argues that Motorola cannot meet its burden to show invalidity by clear and convincing evidence, *i.e.,* that it is highly probable the '948 Patent is either anticipated by or obvious over Mori.[7] *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011) (holding clear

---

[6] Motorola argues that Dr. Bentley's declaration improperly supplements her expert report and should be excluded under Federal Rule of Civil Procedure 37(c)(1). The Court OVERRULES this objection.

[7] Motorola also asserted Claim 5 was obvious over another prior art reference: Ise 206. During discovery, the parties filed a joint letter brief, in which Largan argued that Dr. Milster provided two invalidity opinions that were not adequately disclosed in Motorola's Amended Invalidity Contentions. (Dkt. No. 286, Order on Joint Discovery Letters at 2:16-19.) Magistrate Judge Ryu agreed and struck paragraphs 336-337, 340-435, and 487-490 of Dr. Milster's Report. (*Id.* at 9:16-17, 12:22-13:2.) As a result of that ruling, Motorola conceded summary judgment

and convincing standard applies); *Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 141 F.4th 1367, 1374 (Fed. Cir. 2025) ("Clear and convincing evidence is evidence that places in the fact finder an abiding conviction that the factual contentions at issue are highly probable to be true.") (cleaned up).

**1. Largan is Entitled to Judgment on Anticipation.**

To overcome Largan's motion on anticipation, Motorola must demonstrate there are genuine disputes of fact that each limitation in Claim 5 is disclosed – expressly or inherently – in Mori. *See, e.g., Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1571 (Fed. Cir. 1986). Dr. Milster opined that *if* the United States Court of Appeals for the Federal Circuit agreed with Largan that the written description of the '948 Patent disclosed a first lens element with negative refractive power and/or a second lens element with positive refractive power, *then* Mori anticipates claim 5. The Federal Circuit did not agree with Largan. *See Largan Precision Co., Inc. v. Motorola Mobility, LLC*, 2025 WL 2538735 (Fed. Cir. Sept. 4, 2025) (per curiam), *affirming Motorola Mobility, LLC v. Largan Precision Co., Ltd.*, 2024 WL 39120, at *5-10 (P.T.A.B. Jan. 3, 2024). Motorola has not proffered any other argument or evidence that Mori anticipates Claim 5 of the '948 Patent.

Accordingly, the Court GRANTS Largan's motion on the issue of anticipation.

**2. Largan is Not Entitled to Judgment on Obviousness.**

Largan also argues Motorola cannot show Claim 5 of the '948 Patent is invalid over Mori. A patent is invalid as obvious "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. Whether a patent is obvious is a question of law that depends on underlying factual questions. *Graham v. John Deere of Kansas City*, 383 U.S. 1, 17 (1966); *see also Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007).

---

would be appropriate on the Ise 206 reference. Accordingly, the Court GRANTS, IN PART, Largan's motion.

United States District Court
Northern District of California

The underlying factual questions include: "the scope and content of the prior art …; differences between the prior art and the claims at issue…; … the level of ordinary skill in the pertinent art," and objective evidence of nonobviousness, such as "commercial success, long felt but unsolved needs, [and] failure of others[.]" *Graham*, 383 U.S. at 17-18.

Mori teaches "a first lens of a negative meniscus lens which is curved to be convex towards an object; a second lens of a positive lens which is curbed [*sic*] to be convex on an object side surface thereof; … [and] a third lens which is curved to be convex towards an image." (Dkt. No. 261-24, Brennan MSJ Decl., Ex. 23 (Mori, Abstract; *see also id.* ¶¶ [0055], [0057], & cl. 1).) That configuration of elements is opposite to the configuration of elements that Claim 5 teaches. Largan argues Dr. Milster offers no reason why as POSITA would be motivated to flip the first three elements in Mori's configuration to match what is taught in Claim 5.[8]

Mori teaches that "[b]y adopting this [five lens] configuration, a high performance lens system can be obtained. In particular, an achromatism effect can be obtained by adopting the combination of the positive lens and the negative lens for the first lens and the second lens." (*Id.*, Mori at ¶ [0009]; *see also id.* at ¶ [0064].) With respect to the third lens element, Dr. Milster opines that "it was common knowledge in the art that when implementing a system like Mori, a meniscus element could be flipped. (Milster Report ¶ 452.) Dr. Milster also relies on Mori's statement that "the invention is not limited to the embodiment and the individual numerical examples but can be modified variously. For example, the values of curvature of radius, surface space and refractive index are not limited to the values shown in the individual numerical examples but can take other values." (*Id.* at ¶ [0088].)

Dr. Bentley disagrees with Dr. Milster's opinion. In her view, his conclusions are based on hindsight. (Dkt. No. 261-19, Brennan MSJ Decl., Ex. 18 (Bentley Rebuttal Report, ¶¶ 112, 116).) She also opines that Dr. Milster's reliance on a reference from Smith in paragraph 452 of his Report does not provide a motivation to flip the third lens element. She explained that flipping or referring the element is one item that Smith discusses in a "long 'listing of changes in the design

[8] Largan also contends that Dr. Milster's reliance on Zemax is insufficient to create an issue of fact. For the reasons set forth in Section B, the Court finds that argument unpersuasive.

form or the design approach that *__may__* significantly improve *__or__* change a lens design." (*Id.*, ¶ 121 (quoting Smith at 47 and adding emphasis); *see also id.* ¶¶ 120-122.)

Dr. Bentley also notes that that Dr. Milster previously testified that "specifying lens power is an indication that lens power is a critical characteristic defining the lens system," a point of view that seems to contradict his opinion that a POSITA would be motivated to flip the refractive power of the first and second lens elements. (*Id.* ¶ 123 (internal quotations and citations omitted); *see also* Dkt. No. 261-20, Brennan MSJ Decl., Ex. 19 (Declaration of Tom Milster, Ph.D., ¶¶ 53-54).) Dr. Bentley opines the same logic would apply to the shape of a lens surface: "if the inventor took pains to describe it, it must be an important feature and one that a POSITA would not have lightly decided to alter." (Brennan MSJ Decl., Ex. 18 (Bentley Rebuttal Report ¶ 122); *see generally id.* ¶¶ 123-130.)

The Court concludes Motorola has met its burden to show there are triable issues of fact on whether the Claim 5 of the '948 Patent is invalid over Mori, and it will be up to the fact finder to determine which expert is more credible.

Accordingly, the Court DENIES, IN PART, Largan's motion for summary judgment on validity.

**G. The Court Grants Motorola's Motion for Partial Summary Judgment.**

Motorola argues that Largan cannot recover patent damages prior to June 15, 2021, because it failed to comply with 35 U.S.C. section 287(a), which provides:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement

United States District Court
Northern District of California

shall constitute such notice.

Largan virtually marks products that practice its patents on a website. (Dkt. No. 280-1, Declaration of Sterling Brennan in Opposition to Motorola MSJ ("Brennan Opp. Decl."); Dkt. No. 279-5, Brennan Opp. Decl., Ex. D (Largan's Supp. Resp. to Motorola's Interrogatory No. 14).)[9] Largan also marks the outside of shipping containers with labels that state the products inside are covered by Largan patents and include the URL to Largan's website. (*See id.*) To search Largan's website, it is necessary to have a shipment barcode and a product identification number. (Dkt. No. 256-1, Declaration of Kathleen Geyer in Support of Motion for Summary Judgment ("Geyer MSJ Decl."); Dkt. No. 256-13, Geyer MSJ Decl., Ex. 24 (screen shot of landing page for Largan's marking website).)

**1. Motorola has met its burden to identify unmarked products.**

Motorola bears an initial burden of production to identify the products it believes are unmarked. "[T]his is a low bar." *Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) ("*Arctic Cat I*"). Largan argues that Motorola failed to meet that burden. On December 20, 2023, Motorola sent a letter to Largan and identified specific products Motorola contended were unmarked. That list was based on its review of Largan's allegations and document productions. Motorola stated, "this identification is based on Largan's own allegation that the instrumentalities practice or are licensed, and not based on any contention of Motorola regarding claim coverage." (Dkt. No. 253-10, Geyer MSJ Decl., Ex. 8; *see also* Dkt. No. 256-4, Geyer MSJ Decl., Ex. 9 (Largan Resp. to Motorola Interrogatory No. 15).)

The Court concludes that Motorola has met the low bar necessary to provide Largan with notice of the products it contends are unmarked. *See, e.g., DIVX, LLC v. Netflix, Inc.*, No. CV 19-1602-GW-DFMx, 2025 WL 4231573, at *36 (C.D. Cal. Dec. 18, 2025) (finding initial burden of production met even though defendant did not expressly state it believed the products practiced the asserted patents because "[b]y identifying the products, it is implicit that" the defendant believed

[9] The URL for the website is http://patentmk.largan.com.tw/indexEn.php.

they did); *Contour IP Holding, LLC v. GoPro, Inc.*, No. 17-cv-04738-WHO, 2020 WL 5106845, at *6 (N.D. Cal. Aug. 31, 2020) (noting that the defendant "need not concede that … products practice the patents because the purpose of its initial burden is to prevent a large scale fishing expedition and gamesmanship"); *Fortinet, Inc. v. Sophos, Inc.*, 13-cv-05831-EMC, 2015 WL 6513655, at *2 (N.D. Cal. Oct. 28, 2015) (court rejected the plaintiff's argument that summary judgment on marking was only appropriate if the defendant conceded the plaintiff's products practiced the claimed invention).

**2. Motorola Is Entitled to Summary Adjudication on the Issue of Failure to Mark.**

Motorola argues it is entitled to summary adjudication on this issue because: (1) Largan's patent marking website is not accessible to the public without charge; and (2) Largan has no evidence that its licensees comply with the marking requirement. The landing page for Largan's website includes the following note:

> Largan's products may be protected by one or more Largan patents. To see what Largan patents protect your Largan products, please enter your shipment barcode in the box above. This Virtual Patent Marking is effective for products with a shipment date of and/or after July 11, 2014. The patent numbers are listed based on the status as of its shipment date; therefore, the patent numbers listed may not be the latest patent status. For products with a shipment date prior to July 11, 2014, please refer to the packaging that came with the product for patent marking.

(Dkt. No. 256-13, Geyer MSJ Decl., Ex. 24.)

Largan argues it does not have a paywall limiting access to its marking website, but the record does not contain evidence to show how the public would access the portion of the website that correlates patents to products without purchasing a product. (*See, e.g.,* Dkt. Nos. 256-4 and 256-5, Geyer MSJ Decl., Exs. 9, 10 (Largan Resp. to Motorola Interrogatory No. 14) ("In response, [to the entry of barcode and product identification], the Patent Marking Website displays a dynamic list of all patents practiced by the identified products for the identified shipment."); Dkt. No. 253-17, Geyer MSJ Decl., Ex. 25 (Deposition of Leon Chen at 111:3-115:21).)

Largan does argue the structure of its website satisfies Section 287(a) "because of the niche market for [its] lens assemblies, which are not purchased by everyday customers." (*Id.* at 13:13-

15.) The plain language of Section 287(a) does not support Largan's argument. *See, e.g., United States v. Ron Pair Enters. Inc.*, 489 U.S. 235, 241 (1989) (matters of statutory interpretation begin "with the language of the statute itself"). Section 287(a) requires that a patent marking website be accessible to the public, without qualifying or limiting the term public. Largan's interpretation also is inconsistent with the purpose of Section 287: to provide information about "the status of the intellectual property embodied in an article of manufacture or design." *Bonito Boats, Inc. v. ThunderCraft Boats, Inc.*, 489 U.S. 141, 162 (1989); *see also Am. Med. Sys., Inc. v. Med. Eng. Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993) ("The purpose of the constructive notice provision is to give patentees the proper incentive to mark their products and thus place the *world* on notice of the existence of the patent.") (cleaned up and emphasis added).[10] The Court concludes Largan has not shown there are triable issues of fact about whether its marking website is accessible to the public without charge.

Turning to Motorola's second argument, "[a] patentee's licensees must also comply with [Section] 287, because the statute extends to 'persons making or selling any patented article for or under the patentee.'" *Arctic Cat*, 876 F.3d at 1366 (quoting *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996)). When third parties, such as licensees, are involved, courts have determined that "substantial compliance" with Section 287(a) may suffice. *See, e.g., Maxwell*, 86 F.3d at 1112; *accord Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*"). Here, Largan argues that the third parties who install its lens assemblies into smart phones are excused from marking requirements pursuant to the doctrine of patent exhaustion. That doctrine "provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008). Largan fails to cite any evidence, such as the agreements with those third parties, or

---

[10] In *Rutherford v. TrimTex, Inc.*, the district court rejected the plaintiff's argument that alternative marking should be acceptable when a product would not be visible to the public after it is installed. 803 Fed. Supp. 158, 164 (N.D. Ill. 1982). The court reasoned that for the product in question, the time "when this product is 'in use' is when it is being installed during drywall construction, and the 'public' for which notice is provided are building contractors." *Id.* To the extent this case suggests the term public in Section 287(a) would be limited to a subset of the public, for the reasons above the Court does not find its interpretation of Section 287(a) persuasive.

legal authority to support this argument. The Court concludes Largan fails to meet its burden to show there are triable issues of fact about whether its licensees comply with Section 287(a).

Accordingly, the Court GRANTS Motorola's motion for summary adjudication on this issue.

**CONCLUSION**

For the reasons set forth above, the Court DENIES the motions to exclude Dr. Milster and Dr. Barbastathis, DENIES the motion to strike foreign language documents, GRANTS, IN PART, AND DENIES, IN PART, Largan's motion for summary judgment, and GRANTS Motorola's motion for summary adjudication. The Court ORDERS the parties to appear for a status conference on September 4, 2026, at 9:00 a.m. by Zoom webinar. The parties shall file a joint status report by no later than August 28, 2026, which shall address whether further ADR efforts would be fruitful and which shall propose a pretrial and trial schedule.

**IT IS SO ORDERED**.

Dated: July 29, 2026

JEFFREY S. WHITE
United States District Judge